**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH POTTER, | ) | No. CV 12-1305-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 15, 2012, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on March 28, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 5, 2012, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 6, 1957.  [Administrative Record ("AR") at 95.]  She completed two years of college, and has past relevant work experience as a telephone clerk and a debt collector.  [AR at 219, 224.]

On January 10, 2009, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since July 4, 2008, due to migraine headaches, arthritis, acid reflux, problems with her back (including stiffness, spasms, scoliosis, disc herniations, and degenerative narrowing of her spinal canal), and problems with her knees, left foot, and right arm.  [AR at 95-96, 115-18, 197-98, 217-26.]   After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 115-18, 120-35.]  Following two continuances, a hearing was held on November 4, 2010, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 53-94.]  A vocational expert also testified.  [AR at 81-83.]  A supplemental hearing was held on May 26, 2011, at which time plaintiff again appeared with counsel and testified on her own behalf.  A different vocational expert also testified.  [AR at 27-52.] On July 29, 2011, the ALJ determined that plaintiff was not disabled.  [AR at 100-09.]  On January 11, 2012, the Appeals Council denied plaintiff's request for review.  [AR at 1-5, 24.]  This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since her alleged disability onset date, July 4, 2008. [AR at 102.][1] At step two, the ALJ concluded that plaintiff has the following impairments, which in combination are severe: idiopathic scoliosis and degenerative disc disease (with spinal canal stenosis) of the lumbosacral spine, scoliosis and degenerative arthritis of the thoracic spine, and a history of a comminuted fracture of the right humerus (status post open reduction and internal fixation with three bone screws on January 12, 1977); obesity beginning August 2009; and beginning December 2009, residuals (arthritis) of anterior cruciate ligament tear (status post repair in 2000), arthritis of the left knee, and recurrent urinary tract infections. [AR at 102-03.] At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 104.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform the full range of "sedentary work" as

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through September 30, 2013. [AR at 102.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1   defined as defined in 20 C.F.R. § 404.1567(a).[3]  [Id.]  At step four, the ALJ concluded that plaintiff

2   is capable of performing her past relevant work as a collection clerk and a telephone answering

3   service operator.  [AR at 108.]  Accordingly, the ALJ determined that plaintiff was not under a

4   disability from July 4, 2008, through July 29, 2011, the date of the decision.  [AR at 108-09.]

5

6                                                 **V.**

7                                   **THE ALJ'S DECISION**

8            Plaintiff contends that: (1) her case "should be remanded for proper consideration of

9   medical evidence submitted to the Appeals Council"; (2) in determining that plaintiff can perform

10  sedentary work, the ALJ failed to consider "the combined impact of all impairments and side

11  effects of medications"; and (3) the ALJ improperly discounted plaintiff's credibility.  [Joint

12  Stipulation ("JS") at 3.]  As set forth below, the Court agrees with plaintiff, in part, and remands the

13  matter for further proceedings.

14

15  **PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

16           "To determine whether a claimant's testimony regarding subjective pain or symptoms is

17  credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

18  1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

19  objective medical evidence of an underlying impairment 'which could reasonably be expected to

20  produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.3d 341, 344

21  (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the

22  claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively

23  suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons

24  for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504

25

26           [3]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting

27  or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
    as one which involves sitting, a certain amount of walking and standing is often necessary in

28  carrying out job duties."  20 C.F.R. § 404.1567(a).

F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff made statements and gave testimony concerning the severity of her symptoms in a February 2, 2009, Exertional Activities Questionnaire [AR at 245-48], in a May 10, 2009, Function Report [AR at 259-66], at her November 4, 2010, hearing before the ALJ [AR at 53-85], and at her May 26, 2011, supplemental hearing before the ALJ. [AR at 27-52.] Plaintiff stated that "[a]ll of [her] joint[s] ache and hurt." [AR at 248.]  Specifically, she stated that she has "a lot of pain" in her knees, spine, and the lower back portion of her spine; that her "left foot hurts and at times feels like it is ripping"; and that her "[r]ight arm joint get[s] sore if used to[o] much." [AR at 32, 245, 248.] Plaintiff reported that she experiences numbness in her left foot and suffers from a loss of balance. [AR at  245, 248.] She also reported that she has back spasms, as well as stiffness in her back to the point where, on some days, it is "so stiff [that she] can't get out of bed." [AR at 245, 248.] Plaintiff testified that she "sleep[s] a lot" during the day because spasms in the lower lumbar section of her back interfere with her sleep at night such that she must get up and move every few hours. [AR at 67-68.] She stated that due to her problems with her left ankle, she can only walk or stand for 10 minutes at a time, and can only walk half a block before needing to rest for 10 minutes. [AR at 66, 264.] Plaintiff further testified that her back spasms prevent her from sitting for more than 20 to 30 minutes, and stated that standing or sitting too long causes cramping in her left leg. [AR at 72, 245.]

Plaintiff testified that "[t]he pain is [her] biggest problem," and that even though she sometimes does not feel well or becomes sleepy due to her medications, she "[does not] want to

just sit in pain." [AR at 41.]  She further testified that the epidurals she receives in her spine "[do not] stop the spine pain," but "reduce the inflammation of the nerve that runs down [her] leg[s]" to prevent "[her] feet ... from going numb so much."  [AR at 42-43.]  Plaintiff stated that her knee injections "[do not] stop all the pain" either, and that "the reason why [she] even [gets] the shots is so that [she] can ... walk."  [AR at 44.]  Plaintiff also stated that the medication she takes for her back spasms only reduces the spasms "[a] little."  [AR at 72.]

At step one, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR at 105.]  Thus, at step two, as the record contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting plaintiff's subjective symptom testimony.  See Lingenfelter, 504 F.3d at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ discounted plaintiff's credibility because he found her statements concerning the severity of her impairments to be inconsistent with: (1) her "overall treatment history"; (2) her daily activities; and (3) the objective medical evidence.  [See AR at 105-07.]

First, the Court finds that the ALJ's reliance on plaintiff's "overall treatment history" was not a convincing reason to discount plaintiff's credibility.  Pointing out that plaintiff testified that her medications make her "groggy" [see AR at 34], the ALJ stated:

> However, if the side effect was so severe that it affected her tolerance for the use of the medications, I would expect that she would inform her doctor so that they would be ceased or changed.  Notably, however, this complaint is not reflected in her doctor's progress notes. This tends to indicate that her condition was adequately managed with the prescribed treatment without significant side effects.

/

---

[4]     The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[AR at 106 (citations omitted).]   The ALJ's reasoning in this regard is unconvincing for two reasons.  First, plaintiff testified that her "biggest problem" is pain, not sleepiness, and that she stopped working because of her pain.  Thus, it is not reasonable to expect that plaintiff would ask her doctors to cease or change her medications *simply* because they make her sleepy.   In addition, it is not apparent to the Court how the absence of such a request in plaintiff's doctor's notes is at all relevant to whether "her condition was adequately managed with the prescribed treatment."   Whether plaintiff ever requested to change medications due to the side effect of grogginess has no bearing on whether those medications were effective in controlling her *pain.* Next, the ALJ noted that "when [plaintiff] received an epidural injection to her back [on September 23, 2010], three years had passed since her last one and she was given the shot despite essentially normal findings on physical examination."   [AR at 106 (citing AR at 832, 835).] Nevertheless, the doctor who examined plaintiff on that date found that plaintiff had "moderate restriction in flexion and ... extension" in her lumbar range of motion; diagnosed her with "[l]ow back and right leg pain suggestive of lumbar radiculitis[,] L4-5 spinal stenosis[,] [and] L4-5 and L5-S1 spondylosis"; and scheduled a lumbar epidural steroid injection for plaintiff.  [AR at 832-35.] To the extent the ALJ concluded that plaintiff's back symptoms did not warrant an epidural steroid injection because of the doctor's other findings on that date, such a conclusion conflicts with the doctor's determination that plaintiff had "low back ... pain" that *did* warrant an epidural injection. An "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion[s]." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks and citations omitted); see Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to the claimant's physical condition).  Finally, the ALJ found that plaintiff's "overall treatment history" was inconsistent with her subjective symptom testimony because "her treatment in 2011 has consisted mostly of routine care."  [AR at 106 (citing AR at 987-92).]  However, by focusing on six pages of medical records reflecting three doctor visits over a two-month period -- out of hundreds of pages of records reflecting scores of visits between plaintiff's alleged disability onset date and the date of the ALJ's decision -- the ALJ ignored competent evidence in the record, which was

1   improper.  See Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an

2   evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony

3   and reports"); see also Day, 522 F.2d at 1156 (an ALJ is not permitted to reach a conclusion

4   "simply by isolating a specific quantum of supporting evidence").  Indeed, the following treatment

5   reflected in the record does not support the ALJ's characterization that plaintiff received only

6   "routine care" during the relevant period: plaintiff saw her doctors for leg and foot pain at least once

7   or twice a month between July 2008 and January 2009, including for the application of a short leg

8   cast from just below plaintiff's left knee to her toes [see AR at 565, 572-86, 590-93, 598-99]; saw

9   her doctors monthly between September 2009 and January 2010 for knee problems, including for

10  four injections to address her knee pain [see AR at 518-19, 526-28, 530-34, 540-41]; and reported

11  taking hydrocodone[5] in May and June 2009, as well as April 2010, and testified at her May 26,

12  2011, hearing that she takes hydrocodone regularly.  [See AR at 33, 502, 554, 556.]

13          Next, the ALJ's characterization of plaintiff's daily activities mischaracterizes her statements

14  about what she is able to do.  The ALJ stated that plaintiff "reported ... that she was generally able

15  to tend to her personal care needs and do light household chores."  [AR at 106-07.]  On the

16  contrary, plaintiff stated that she has difficulty putting on her shoes and her foot brace; that she

17  bathes by sitting in the shower and using a handheld showerhead; that "sometimes it hurts to raise

18  [her] hands over [her] head" to care for her hair; and that she uses an elevated toilet seat, but

19  "ha[s] difficulty wiping [her]self due to bending."  [AR at 260.]  Moreover, while plaintiff reported

20  that she can do the dishes, sweep the kitchen floor, and fold clothes a few times a week [AR at

21  246, 261], engaging in some household chores or activities is not necessarily inconsistent with a

22  finding of disability.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (benefits awarded

23  on appeal to a claimant experiencing constant leg and back pain, despite the claimant's ability to

24  cook and wash dishes); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that

25  the ability to assist with some household tasks was not determinative of disability) (citing Smith

26

27  _____

28      [5]   "Hydrocodone is in a class of medications called opiate (narcotic) analgesics."
    http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html.

v. Califano, 637 F.2d 968, 971 (3d Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")).  The ALJ did not mention in his decision that plaintiff stated she can no longer cook, mop, vacuum, make the bed, or change the sheets on the bed [see AR at 260], and therefore improperly ignored evidence that does not support his conclusion.  See Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).  In addition, the ALJ pointed out that plaintiff can "shop[] in stores," "handle money," and "drive[] twice a week," and concluded that plaintiff "is able to spend a substantial part of the day in activities involving the performance of functions readily transferable to competitive work."  [AR at 107.]  However, plaintiff stated that she goes to the store "maybe" once a month [AR at 262], and that she drives when she "ha[s] to," but prefers not to because she does not feel comfortable doing so while taking her medications.  [AR at 47.]  Moreover, plaintiff reported that her daily routine consists of waking up, taking her medications, "sit[ting] quietly for about [half an hour to wait] for the pain to subside," eating breakfast, dressing, doing back exercises while lying on the floor, taking a mid-morning nap, eating lunch, taking more medications, "put[ting] up [the] mail," eating a snack, doing back exercises again, eating dinner, taking a shower, and going to bed; and also reported that she needs several rest periods or naps during the day.  [AR at 247, 259.]  As such, substantial evidence does not support the ALJ's conclusion that plaintiff can sustain gainful employment because she can handle money, occasionally wash dishes, fold clothing a few times a week, drive when she must, and go to the store once a month, since the ability to do these limited activities does not necessarily translate into an ability to do activities that are "transferable to a work setting."  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"); see also Smolen v. Chater, 80 F.3d 1273,1284 n.7 (9th Cir. 1996).  The ALJ failed to provide clear and convincing reasons, based upon plaintiff's daily activities, to discredit her subjective symptom testimony.

1    Finally,  while an ALJ may consider whether a lack of objective medical evidence supports

2    the degree of limitation, this "cannot form the sole basis for discounting pain testimony."  Burch

3    v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  "The rationale for this restriction is that pain

4    testimony may establish greater limitations than can medical evidence alone."  Id. at 680 (citing

5    Social Security Ruling[6] 96-7p).  Thus, even assuming the ALJ's characterization of the medical

6    evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if his

7    other reasons for discounting plaintiff's credibility are proper.  As discussed supra, they are not.

8    The ALJ did not offer a legally adequate reason for discounting plaintiff's credibility.

9    Remand is warranted.[7]

10   /

11   /

12   /

13   /

14   /

15   /

16   /

17   /

18   /

19   /

20   /

21   /

22

---

23   [6]   Social Security Rulings do not have the force of law.  Nevertheless, they "constitute
     Social Security Administration interpretations of the statute it administers and of its own
24   regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
     Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).
25

26   [7]   The Court exercises its discretion not to address plaintiff's first and second contentions of
     error.  Nevertheless, as the Court herein remands the case to defendant to properly evaluate
27   plaintiff's credibility, the ALJ on remand should also consider the additional evidence plaintiff
     submitted to the Appeals Council after the ALJ's July 29, 2011, decision.  [See AR at 5, 993-1017;
28   JS at 3-6, 8-9.]

VI.

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's subjective symptom testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 17, 2012

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE